# Hughes *v.* Hatchett & Trimble.

*Bill in Equity to enforce Vendor's Lien for Purchase-Money of Land.*

1. *Parties to bill to enforce vendor's lien; parol contract for sale of land.*—An executory parol contract for the sale of land is void under the statute of frauds (Rev. Code, § 1862), and confers no rights on the purchaser, when none of the purchase-money has been paid; consequently, he is neither a necessary nor a proper party to a bill filed by his vendor, against a subsequent purchaser of the lands, to subject them to the payment of the purchase-money.

2. *Same; purchase of lands by executor.*—An executor, acting in good faith, and in the exercise of a sound discretion, may purchase lands at a judicial sale, in order to save a debt due to the estate; and in such case, the lands being regarded simply as personalty in his hands, the devisees or heirs are not necessary parties to a bill filed by him against a subsequent purchaser, to subject them to the payment of the purchase-money.

3. *When purchaser cannot defend on account of incumbrance or defective title.*—A purchaser of lands, remaining in undisturbed possession, cannot set up an incumbrance, or a defect in the title, in defense of a suit to subject them to the payment of his notes for the purchase-money, when there is no allegation of fraud in the sale, and the vendor is not insolvent.

4. *Judgment on affirmance; damages, and interest.*—When a decree in chancery, ordering lands to be sold for the payment of the purchase-money, is affirmed by this court (Rev. Code, §§ 3479-80, 3489-90), the sureties on the appeal bond are only liable for the costs of the appeal, and no money judgment can be here rendered against them, nor damages or interest be awarded against them, although the bond is conditioned as an ordinary *supersedeas* bond.

5. *Special supersedeas bond.*—In cases where a special *supersedeas* bond is required (Rev. Code, §§ 3489-90), it should contain not only the condition prescribed in ordinary cases, but a superadded condition, according to the circumstances of each case, providing indemnity against such damage or loss as the appellee may sustain by the appeal; but any recovery on such bond, beyond the costs of the appeal, must be by suit on the bond.

APPEAL from the Chancery Court of Elmore.
Heard before the Hon. CHARLES TURNER.

| 55 | 539 |
| 93 | 81 |
| 55 | 539 |
| 96 | 530 |
| 55 | 539 |
| 112 | 205 |

The original bill in this case was filed on the 29th April, 1875, by W. T. Hatchett and Benj. Trimble, suing individually, against A. T. Hughes; and sought to subject a certain tract of land, described as "section fifteen (15) and fractional section twenty-two (22), west of the Coosa river, in Elmore county," which the complainants had sold to said Hughes, to the payment of one of the notes given for the purchase-money. The contract of sale was made on the 18th May, 1874, and the complainants executed to said Hughes a bond for titles, in the following words : "Know all men by these presents, that we, Wm. T. Hatchett and Benjamin Trimble, have bargained and sold to A. T. Hughes the following tract of land, to-wit : all of section fifteen (15), and all of fractional section twenty-two (22), west of the Coosa river, in Elmore county, known as the 'Ed. House place,' for the sum of five thousand dollars, payable as follows, to-wit: five hundred dollars on the 1st day of January, 1875, and the balance to be divided into four equal annual payments, with interest from the 1st day of January, 1875 ; the said Hughes taking the contracts made with the following named colored men, for a part of said land, to-wit : Alphonzo Jenkins, Randall Storrs, Jack Thrasher, and George McMorris, and carry out the contracts made with them ; and we agree to make to said Hughes, or to his assigns or heirs, good and lawful title to said land whenever the notes described above are paid, said notes being as follows," describing them. Hughes was put into possession of the land under this contract, but failed to pay the first note (for $500) at maturity ; and thereupon this bill was filed. The prayer of the bill was, that the several notes might be declared a lien on the lands ; that the lands might be sold, and the proceeds of sale be applied, first, to the payment of the note already due, and the balance, after paying the costs of this suit, to the payment of the other notes as they respectively fell due ; and the general prayer, for other and further relief, was added. An amended bill was filed on the 6th December, 1875, which alleged that the defendant, ever since he entered into possession of the lands, had been cutting and hauling away timber from the lands, thereby lessening their value as security for the complainants' debt; and "that said lands are so situated that, if sold in separate parcels, their value will be reduced, and by a sale of them, otherwise than in one body, complainants' security for the payment of the said notes will be endangered and lessened."

The defendant filed an answer to the original bill, and another answer to the bills original and amended; admitting the contract of sale, as shown by the complainants' bond for title, which was made an exhibit to the answer to the original

bill; admitting the complainants' possession of the lands at the time the contract was entered into, but denying that they had a good title, and asserting that they held it in trust for the legatees and devisees under the will of Howell Rose, deceased, of which the complainants were the executors; asserting that said Hatchett, with whom the contract was negotiated, represented to defendant that he and Trimble had verbally sold certain portions of the land to several freedmen, to-wit, Alphonzo Jenkins, Randall Storrs, Jack Thrasher, and George McMorris, and had put them in possession of their respective portions of the land; that by the terms of these contracts, said Jenkins was to have his forty acres of the land in consideration of his having negotiated the contracts with the other freedmen, and they were to pay ten dollars per acre for their respective portions, or two dollars per acre annual rent if they failed to complete the contract of purchase as stipulated; that these contracts with said freedmen formed a material inducement to the purchase on the part of the defendant, but were not correctly represented to him by said Hatchett, who stated to him, while negotiating for the purchase, that each of said freedmen was to pay ten dollars per acre, in three equal annual installments, in cotton, and was to forfeit all interest under said contract if the purchase-money was not paid as stipulated; that said Hatchett afterwards made contracts with several commission-merchants and grocery-merchants in Wetumpka, by which he waived his landlord's lien on the crops in their favor, in order that said freedmen might be able to obtain provisions and necessary supplies from them; that this waiver was made without the knowledge or consent of the defendant; that said freedmen failed to pay the first installment of the purchase-money for their portions of the land, and their crops were seized by said commission-merchants under their statutory lien for advances, and respondent thereby lost the rent due from them respectively, and suffered loss and damage to an amount equal to, if not greater than, the amount due on said first note for the purchase-money. The defendant prayed that his answer might be taken as a cross bill in reference to these matters; that he might be allowed to set off, or recoup, the damages accruing to him by these misrepresentations and this waiver, against the amount due to the complainants on the unpaid note for the purchase-money; and that the complainants might be required to bring in the legatees and devisees under the will of Howell Rose, as parties to their bill.

The complainants filed an answer to the cross bill, admitting that they bought the lands at a sale made by the reg-

[Hughes v. Hatchett & Trimble.]

ister in chancery at Wetumpka, under a decree in their favor as executors of the last will and testament of Howell Rose; alleging that they made the purchase at the instance and request of all the persons interested in said estate, and for the purpose of saving a debt due to the estate ; and insisting that the land was to be treated in their hands as personal assets of the estate. As to the verbal contracts with the freedmen, they alleged that the facts were correctly represented to the defendant, and that he consented to the waiver of the landlord's lien in favor of the several commission-merchants who furnished supplies to the freedmen.

Pending the suit, the complainants asked and obtained the appointment of a receiver, to take possession of the lands, and the rents and profits thereof ; but an appeal was taken from the decision of the chancellor in this matter, and his decree was reversed by this court on a former day of this term.—See the case reported, on a subsequent page.

On final hearing, on pleadings and proof, the chancellor rendered a decree in favor of complainants ; ordering a sale of the lands by the register, unless the amount due to the complainants on account of the unpaid note for the purchase-money was paid by a specified day, and that the decree should stand as security for the other notes for the purchase-money, as they respectively matured. From this decree the defendant appeals, and here assigns as error, 1st, that the chancellor erred in not requiring the legatees and devisees under the will of Howell Rose to be brought in as parties; 2d, in not requiring the several freedmen above named to be brought in as parties ; 3d, in not allowing the defendant's claim for damages ; 4th, in the final decree rendered.

R. M. WILLIAMSON, for appellant.—1. If Hatchett and Trimble bought the lands with the consent of the legatees and devisees under the will of Howell Rose, as they allege, they hold the legal title in trust for said legatees and devisees. If they bought said lands on their own authority, without the consent of said devisees and legatees, it is optional with the latter whether they will ratify or repudiate the purchase. In either event, the legatees and devisees are necessary parties to this bill. The court cannot exercise or disregard the right of election which the law gives them. Land is always regarded as the safest investment, and the presumption is that the beneficiaries would prefer the land. *Ousley v. Anstruther*, 10 Beavan, 456 ; *Wiswall v. Stewart*, 32 Ala. 433 ; *Charles v. DuBose*, 29 Ala. 367 ; *Royall v. McKenzie*, 25 Ala. 363 ; 1 Rand. 273 ; 7 Sm. & Mar. 409.

[Hughes v. Hatchett & Trimble.]

2. The several freedmen should have been made parties ;
at least, Jenkins should, if none of the rest, since he had
paid part of the consideration in negotiating the contracts
with the others, and was in possession under his purchase.
19 Ala. 481 ; 3 Stew. 393; 4 Porter, 374 ; 15 Ala. 271.

3. The defendant was entitled to set off, or recoup, dama-
ages sustained by him on account of Hatchett's waiver of
his landlord's lien for rent due from the freedmen, unless
such waiver was made with the consent of the defendant.
The defendant denies that he consented to such waiver,
and the complainants fail to prove that he did consent.   The
burden of proof was on them.

E. J. FITZPATRICK, *contra.*—The lands bought by the exec-
utors, under the chancery decree in their favor, were per-
sonal assets in their hands, and the devisees had no interest
in them, except as personal assets on final settlement of the
estate.—*Clark v. Moses,* 50 Ala. 328.; *Baldwin v. Hatchett,*
*Dugger v. Bocock,* and *Cullen v. Lee,* at the present term ; 11
Grattan, 792 ; Perry on Trusts, § 458.   That the devisees
were not necessary parties to the bill, see 4 Stew. & P. 447 ;
4 Paige, 23 ; 5 Ala. 161, 173.

2. The contracts with the freedmen were verbal, and were
entirely executory ; consequently, they were void.—Rev. Code,
§ 1862.   Moreover, the proof shows that the freedmen had
abandoned the land, and relinquished all interest, if any,
in the contracts.

3. As to the alleged set-off, or claim for damages, the de-
fendant admits that he was consulted about the waiver of
the claim for rent, but denies that he consented to it.   As
matter of defense, the burden of proof was on him to show
that he did not consent.   He was in possession, and no
waiver by Hatchett, without his consent, could affect his
rights.   If he stood idly by, and suffered the crops to be re-
moved, without asserting his claim for rent, he alone must
suffer the consequences.

4. If the decree of the chancellor is affirmed, the appellees
are entitled to a money decree against the appellant and the
sureties on his appeal bond, with damages and interest.   That
is the express condition of their bond, which is in the form of
an ordinary *supersedeas* bond.   They contracted to pay the judg-
ment which this court might render.   If they had given their
notes for delay, they could not be heard to ask that the land
should be first sold.—*McNeill v. McNeill,* 36 Ala. 109 ; *Fos-
ter v. Athenæum,* 3 Ala. 302; *Lyon v. Leavitt,* 3 Ala. 430.   The
decree ascertained the amount of the complainants' debt,
and ordered its payment by a specified day.   It was, in form

[Hughes v. Hatchett & Trimble.]

and effect, a decree for money, and the statute gives it the effect of a judgment.—Rev. Code, § 3479. The appellant has obtained the benefit of the delay by the execution of this bond, and has thereby increased the complainants' debt. The proof shows that he is insolvent, and that the land is not of value sufficient to pay the notes not yet due. Irreparable loss must ensue to the complainants, unless the terms of their contract are enforced against the sureties.

STONE, J.—The contract of purchase, if it may be so called, by which, it is contended, Jenkins, Starns, McMorris, and Thrasher acquired an interest in parts of the lands in controversy, was, in each case, an oral agreement, never reduced to writing; and there is neither averment nor proof that either of them has ever paid any part of the purchase-money. Such negotiation, or agreement, is void under the statute of frauds (Rev. Code, § 1862, subd. 6);—and it results, that there was no necessity for making them parties. A void contract, if it be not a solecism to call it a contract, can confer no rights. They were neither necessary nor proper parties.

An argument is made, which seeks to distinguish Jenkins' case from the others, and to show that he had made full or partial payment of his purchase, and should have been made a party. The position taken is, that by the terms of his agreement, he paid for his forty acres by negotiating the sale to the others. We do not so understand the testimony. His statement agrees substantially with that of Hatchett. He purchased at $10 per acre, but was to be allowed a credit on his purchase for ten per cent. of all moneys realized by Hatchett, on sales effected by Jenkins' agency. Nothing was ever realized on such sales, and hence Jenkins was entitled to no credit on that account. He paid nothing. It may not be out of place to add, that all of said parties have left the possession of the lands they had agreed to purchase, and, it would seem, now set up no claim whatever to the lands.

On the question of the waiver of lien for rent, given by Hatchett for the accommodation of some of said purchasers, his testimony and that of Hughes are not in exact harmony. He testifies, that Hughes agreed that such waiver should be made. Hughes says, "there was some conversation in reference to a waiver of lien for 1874, but witness says he never agreed to any waiver." The chancellor, in his decree, overruled all defenses, and therefore disallowed this claim. We suppose he was convinced by the evidence that Hughes had agreed to the waiver, and we are not convinced he erred in so holding.

[Hughes v. Hatchett & Trimble.]

2. It is contended, that the devisees of Howell Rose were necessary parties to this suit. The reason urged is, that because Hatchett and Trimble, who were the executors of Rose's will, purchased this land with assets which were of his estate, the devisees are clothed with the option of ratifying the purchase, as made for their benefit, and thus claiming the land, or of renouncing the purchase, and holding the executors accountable for the money. This is by no means a universal rule. When the circumstances are such as to make it appear that a purchase of lands is necessary to the performance of the high trust and duty of collecting the assets and making them available, the personal representative, if he act in good faith, and with reasonable diligence, will not be held accountable as for a *devastavit*, even if by such purchase loss to the estate ensue; and property thus purchased, though it be land, is treated as personalty. "An administrator, having purchased for the estate land sold for the payment of a debt due to the estate, held, under the circumstances, not bound to keep the land and account for the price; but the land is to be treated as the property of the estate."—*Powell v. Stratton*, 11 Grat. 792. "The trustee, in such case, must make a careful investigation, and exercise a sound discretion, or his advances will not be allowed in case of a loss. * * So, an administrator may buy in the land of a debtor to his estate, to save his debt. Such an investment is a mere temporary expedient, and is to be treated as personal estate."—Perry on Trusts, § 458; *Oeslager v. Fisher*, 2 Penn. St. 467. No bad faith, nor want of diligence, is charged or shown in this record; and we think the case falls directly within the principle above stated. This land must be regarded simply as personalty; and it follows, that the devisees were not necessary parties.

3. Another principle, if necessary to invoke it, may possibly be fatal to the defense of incumbrance on the title, here relied on. Hughes remains undisturbed in the enjoyment of the land purchased, and he fails to aver fraud in the sale, and fails to prove insolvency of his vendors.—See *Strong & Wife v. Waddell*, at present term.

Decree of the chancellor is affirmed.

Note by Reporter.—The chancellor's order in this case, granting an appeal, required the appellant to give bond, "payable and conditioned as required by law in the cases of appeals intended to operate as a *supersedeas* of judgments and decrees;" and the condition of the bond was, that the appellant should "prosecute the said appeal to effect, and satisfy such decree as the Supreme Court may render in the

premises." On the delivery of the foregoing opinion, a judgment of affirmance was rendered, in the usual form, with the addition of these words : "It is further considered, that the appellant and John D. Letcher, John A. Logan, and John Edwards, sureties on the *supersedeas* bond, pay the amount of the decree of said Chancery Court, five per cent. damages and interest thereon, and the costs in this court and in said Chancery Court." The sureties thereupon applied to the court by petition, through their attorneys, D. CLOPTON and L. E. PARSONS, Jr., asking an amendment, or modification of this judgment, "so as to direct a sale of the land condemned by the decree of the court below, before execution shall issue to collect the amount of said decree from said sureties, or for such other amendment or modification of said judgment as may be proper." No brief or argument on the part of the counsel for the petitioners has come to the hands of the Reporter, and he has included the brief of the appellees' counsel in the brief on the merits of the case, *supra*. In reply to this petition, on a subsequent day of the term, the following opinion was delivered:

STONE, J.—The question is raised, what judgment should we render on an affirmance of the chancellor's decree? Can a money decree be rendered against the sureties? Can damages be awarded against them? The latter question is dependent on the solution of the first.

The present is not a judgment or decree for the payment of money, within section 3489 of the Revised Code. It comes under section 3490, which enacts that, "when the decree rendered is for the performance of any other act than the payment of money (except in cases otherwise provided by this Code), the party wishing to supersede the execution of such decree must apply to the chancellor, or register, either in term time or vacation, who must direct the amount and the condition of the appeal bond." This section was amended (Acts of 1874–5, page 256), but in no respect material to this case.

The object of the bill in this case was to have land sold in payment of the purchase-money. Such was the special prayer of the bill. Under it, there could be, and was, no decree for the payment of money. True, the chancellor ascertained the amount due, that he might decree for what sum the property should be condemned to sale. There was no order that the money should be paid. In *Hooks v. Branch Bank*, 18 Ala. 451, this court said, "We think it too clear to admit of doubt, that this court can only award ten per cent. damages upon affirming the judgment of an inferior court,

[Hughes v. Hatchett & Trimble.]

when the judgment of the inferior court is for a specific moneyed demand; for it is only on such judgments that we can compute or ascertain damages at the rate of ten per cent." That case has been followed in this court ever since; and it has been uniformly held, that its principles apply to suits to foreclose mortgages, and to enforce vendors' liens.

We have been referred to sections 3479 and 3480 of the Revised Code, as declaring a different rule. We do not so understand those sections. Their object was to do complete justice in one suit, and to avoid the expense of a suit at law, theretofore necessary, to enforce the collection of any balance left unpaid, after exhausting the property subject to the mortgage or vendor's lien. Under such decree, no money judgment can be rendered, or money execution ordered, "until the property ordered to sale shall have been sold, and the sale confirmed, and the balance due ascertained by the decree of such court." Till then, there is no decree for money.

We observe in this case, as in others, a want of attention to what should be the condition of a *supersedeas* bond, in cases like the present. It should be framed in reference to the damages likely to ensue from delay. The order for a *supersedeas* bond in such case, and the bond itself, should not have the sole condition prescribed in section 3489. That condition is inadequate in such a case. They should require and provide indemnity against such damage and loss as the appellee may sustain by the appeal, in addition to the condition prescribed in section 3489. We will not declare what shall, in all cases, be the condition of the *supersedeas* bond under section 3490. Security and indemnity should be of prime consideration. This, doubtless, will require that the judge, or officer prescribing the condition, shall take into the account any peculiar circumstance that may distinguish the case in hand; and counsel should give attention to it. We need scarcely add that, upon a bond so given, this court can render no judgment against the sureties, except for costs. Any recovery beyond that must be in a suit on the *supersedeas* bond. And these remarks apply to section 3490 of Rev. Code, as amended by the act of March 2, 1875.

The clerk will so modify the judgment entry, as to make it a judgment against the sureties for only the costs of appeal. There is no decree for money which we can affirm, or award damages on.