# Mathis *v.* Tenn. & Coosa Rivers Railroad Co.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Grant of lands by Congress, by act approved June 3d, 1856, in aid of railroads in Alabama.*—As to the grant of lands by Congress, by the act approved June 3d, 1856 (U. S. Stat. at large, vol. 11, p. 17; 16 *Ib.* 45), in aid of certain railroads in Alabama, the decisions of the Supreme Court of the United States, and of this court, have established, (1) that the act of Congress vested a legal title in the State of Alabama and its appointees, subject to be devested on non-performance of the condition subsequent; (2) that the failure to perform this condition does not revest title in the United States, but the title remains in the grantee until devested by proper action, legislative or judicial, declaring a forfeiture; (3) that each of the railroad corporations, designated by the State as the recipients of this bounty, might sell and convey, before any work was done on the road, the lands embraced in a continuous length of twenty miles, or one hundred and twenty sections; (4) and that this absolute right of sale does not extend beyond that limit.

2. *Judicial knowledge of public laws, or governmental action.*—This court judicially knows that the United States Government has never taken any action declaring a forfeiture of the lands contained in the grant by said act of June 3d, 1856, which had been allotted and set apart to the Tennessee and Coosa Rivers Railroad Company, as one of the beneficiaries of said grant.

3. *Sale of lands by railroad company; burden of proof as to location.* On a sale by a railroad corporation, one of the beneficiaries of said grant, of any of the lands allotted to it by the State, if located beyond the limits of the first twenty miles of the road, no title would pass to the purchaser, and he could successfully defend, on that ground, a bill

to enforce a vendor's lien on the land; but, having taken possession under his purchase, and still holding it undisturbed, the *onus* is on him to show that fact, or that, for some other reason, the railroad company had no authority to sell, and he acquired no title.

APPEAL from the Chancery Court of Marshall.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 10th September, 1886, by the Tennessee and Coosa Rivers Railroad Company, a domestic corporation, against James Mathis and David Shields; and sought to enforce a vendor's lien on a tract of land, for the purchase-money due and unpaid. The tract of land contained forty acres, being the north-east quarter of the north-east quarter of section thirty-five (35), township eight (8), range four (4) east; and it was described in the writings executed between the parties as part of the "lands granted by Congress in aid of said road." The agreed price was $100, payable in annual installments of $20 each, for which said Mathis executed his five promissory notes; and the bill alleged that all of these notes were unpaid. No conveyance was executed to the purchaser, but writings were signed by each of the parties, which stated the terms of the contract, bound the railroad company to convey on full payment of the purchase-money, and authorized it to enter and take possession on default of payment. Mathis entered into possession under the contract, and afterwards sold to Shields, who was in possession when the bill was filed.

The defendants submitted a motion to dismiss the bill for want of equity, which motion the court overruled; and they filed a joint answer, in which they insisted that the contract of sale was void—that no title to the lands could be conveyed to the purchaser, and that the notes were without consideration. No testimony was taken, but the following facts were agreed on: "The complainant is a corporation, created by special act of the General Assembly of the State of Alabama, approved January 16th, 1844, for the construction and maintenance of a railroad from Gunter's Landing, on the Tennessee River, to Gadsden, on the Coosa River, as shown by said special act, to which reference is hereby made as a part hereof.—Pamph. Acts 1843-4, pp. 170-75. Said corporation was organized under said act; the line of said road from Guntersville to Gadsden was located prior to the 1st January, 1860; and the complainant was working thereon, and much of the road-bed was graded, ready for the cross-ties, bridging, and laying of the iron, prior to 1st May, 1861,

when the work was interrupted in consequence of the break-
ing out of the war; and it was suspended during the war,
and until the time hereinafter stated. By an act of the
General Assembly of Alabama, approved January 20th, 1858,
the State granted to, disposed of, and conferred upon com-
plainant so much of the lands, franchises, rights, powers and
privileges, as were granted to and conferred upon the State
of Alabama by the act of Congress of the United States
approved June 3d, 1856, entitled 'An act granting public
lands, in alternate sections, to the State of Alabama, to aid
in the construction of certain railroads in said State', as were
in and by said act granted and conferred for the purpose of
aiding in the construction of a railroad from the Tennessee
River, at or near Gunter's Landing, to Gadsden, on the
Coosa River; said grant being subject to the condition, that
complainant should execute and deliver to the Governor of
the State a bond faithfully to use the lands granted and ap-
propriated for the purposes of the appropriation and dona-
tion thereof, and to abide by and perform the provisions and
conditions in such act of Congress contained; and on the 8th
August, 1860, complainant executed and delivered a bond
with the conditions aforesaid therein expressed, which bond
was then approved and accepted by the Governor. Prior to
the 23d June, 1860, complainant selected and located, within
fifteen (15) miles of the line of its road, one hundred and
twenty (120) sections of the lands so granted to the State of
Alabama by the said act of Congress; and the selection and
location thereof having been made, and certified by the Gov-
ernor to the Secretary of the Interior at Washington, the
same was in writing approved on the 27th June, 1860, by
Jacob Thompson, Secretary of the Interior; and of the
lands so selected, located, certified and approved, section 35,
township 8, range 4, was a part. After the close of the war,
and on the 12th June, 1871, complainant entered into a con-
tract with the East Alabama and Cincinnati Railroad Com-
pany, for the completion of said road by said last named
company; and said company commenced work under said
contract, and finished five miles of the road, from Gadsden
to Attalla, putting the same in operation. In 1873, said last
named company became bankrupt; and complainant, in order
to regain possession of its road, became involved in litiga-
tion with persons claiming said road under said last named
company, which litigation did not terminate until 1884.
Complainant then regained possession of said road, and has

since been engaged, and is now, in the completion thereof. Complainant has not yet completed said railroad, nor has it completed twenty continuous miles thereof, nor had it at any time. No part of complainant's railroad, commencing at the terminus nearest to said section 35, has been completed, though much thereof has been graded, and made ready for the bridging, cross-ties and iron. The completion of twenty miles of said road has never been at any time certified by the Governor to the Secretary of the Interior."

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; and this decree is now assigned as error by the defendants, together with the overruling of their motion to dismiss the bill for want of equity.

HAMILL, LUSK & BELL, for the appellants, cited *Swann &* *Billups v. Miller*, 82 Ala. 530; 1 Wait's Actions & D. 90-94.

R. C. BRICKELL, *contra*.    (No brief on file.)

STONE, C. J.—The following principles must be regarded as settled, alike by the decisions of the Supreme Court of the United States, and by the decisions of this court:

*First*, that by the act of Congress, approved in June, 1856, granting alternate sections of land to the State, to aid in the construction of railroads, a title to the lands granted vested in the State and its appointee, subject to be devested on the failure to perform a condition subsequent.

*Second*, that this condition being reserved for the benefit of the United States, and the right to claim the forfeiture resting in it, the failure of the grantee to perform the condition does not, *ipso facto*, re-vest title in the United States; and until that government takes some action, judicial or legislative, by which it declares the forfeiture, the title remains in the grantee.

*Third*, that under the grant of Congress, the several railroad corporations, in whose favor the legislature conferred and appointed this congressional bounty, had each the power and authority to sell and make valid titles to the lands so secured to it, for a space of twenty continuous miles, being one hundred and twenty sections, without first taking any steps whatever towards the construction of its road.

*Fourth*, that this absolute, unconditional right of sale does not extend beyond the first section of twenty continuous

miles; and before any sale can be made beyond that first section, certain progress must be made in the construction of the road, and proof made of it, which it is admitted have not been done in this case.—*Schulenberg v. Harriman*, 21 Wall. 44; *Swann v. Lindsey*, 70 Ala. 507; *Swann v. Miller*, 82 Ala. 530.

We judicially know that the government of the United States has taken no action declaring a forfeiture of the lands it had granted, which Alabama subsequently appointed to the Tennessee and Coosa Rivers Railroad Company.

In 1879, the appellee corporation sold the lands in controversy to Mathis, who took possession, and he and his sub-vendee have been in the undisturbed possession ever since. The title of the corporation is none other than that conferred by the grant referred to above. The present suit is a bill filed by the railroad corporation to enforce its alleged lien as a vendor, and to recover the purchase-money. The defense relied on is the complainant's want of title, and want of authority to sell.

We think it clear that, if the land in controversy lies within the first twenty continuous miles, the defense attempted is worthless. On the other hand, if it lies beyond the first twenty miles, then the railroad corporation had no power to make the sale, and can convey no title. The case would then stand in the category of a sale of public lands by a private person without title, and the defense would be good. There is neither averment nor proof in the record, whether the land does or does not lie within the first section of twenty continuous miles.

On whom does the burden rest of showing whether the land does, or does not, lie within the section the corporation was authorized to sell? We think on Mathis, the purchaser. He acquired possession under his purchase, and has had peaceable and undisturbed enjoyment ever since,—eight years, or more. Being in possession, he can not defend except for fraud, or, at least, by showing that he bought nothing, and never can get title. This he failed to do.—*Cullum v. Br. Bank*, 4 Ala. 21; *McLemore v. Mabson*, 20 Ala. 137; *Magee v. McMillan*, 30 Ala. 420; *Kelly v. Allen*, 34 Ala. 663; *Hickson v. Lingold*, 47 Ala. 449; *Blanks v. Walker*, 54 Ala. 117; *Hughes v. Hatchett*, 55 Ala. 539; *Wyatt v. Garlington*, 56 Ala. 576; *Tobin v. Bell*, 61 Ala. 125; *Houston v. Hilton*, 67 Ala. 374.

Affirmed.